EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* JUAN GARCÍA GARCÍA, acusado y apelante.

*Número:* CR-69-47    *Resuelto:* 16 de marzo de 1970

*José Rafael Gelpí* y *Sergio A. Peña Clos,* abogados del apelante; *Gilberto Gierbolini, Procurador General* y *Héctor R. Orlandi Gómez, Procurador General Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión del Tribunal.

Con motivo de haberle dado muerte al ser humano Pedro Abraham Solivan, haciéndole varios disparos de revólver, el fiscal presentó acusaciones contra el apelante Juan García García por los delitos de Asesinato en Primer Grado e Infracción a los Arts. 6 y 8 de la Ley de Armas.

El día 7 de diciembre de 1965 se llamaron los casos para juicio. Mientras se sorteaba el jurado y antes de que éste prestara juramento definitivo (Regla 125 de Procedimiento Criminal) el fiscal solicitó permiso del tribunal para enmendar la acusación de asesinato a los fines de incluir una alegación relativa a la anterior convicción del acusado por un delito de Ataque para Cometer Asesinato.

Con la objeción de la defensa el Tribunal permitió la enmienda y concedió cinco días al fiscal para presentar la acusación enmendada, excusó al Jurado y dispuso que se señalara fecha para la lectura de la acusación enmendada. (¹)

Luego de los trámites posteriores consiguientes, los tres casos se vieron conjuntamente, el de Asesinato y el de infracción al Artículo 8 de la Ley de Armas ante jurado y el de infracción al Artículo 6 de dicha Ley de Armas, por tribunal de derecho.

---

(¹) Según la minuta de ese día, el Tribunal se expresó así:

"Los abogados del acusado se oponen a que se acceda a lo solicitado por el Fiscal y debidamente discutida la cuestión el Tribunal declara con lugar la solicitud hecha por el Fiscal y permite que se introduzca

El jurado declaró al acusado culpable de Asesinato en Segundo Grado([2]) y culpable de infracción al Artículo 8 de la Ley de Armas. El tribunal también lo declaró culpable de infracción al Artículo 6 de la Ley de Armas. ([3])

Apeló el acusado de las sentencias dictadas en su contra y en su alegato señala la comisión de cuatro errores, el primero de los cuales lo enuncia así:

"Primer Error: El Tribunal Superior erró al proceder tanto en el caso de asesinato como en el de infracción al Artículo 8

la enmienda solicitada en la acusación y concede cinco días al Fiscal para ello, y excusa a los señores del Jurado que se han venido examinando para actuar en el caso."

([2]) El acusado ya había admitido la convicción anterior.

([3]) La prueba de cargo tendió a demostrar, en síntesis, que como a las dos de la tarde del día 28 de mayo de 1965, el porteador público Pedro Abraham Solivan, estacionó su automóvil al lado de la plaza de recreo de Caguas para hacer turno. Estando sentado en el asiento delantero detrás del guía de su automóvil pasó por allí Norberto Polo Martínez y Abraham Solivan lo llamó. Martínez subió al vehículo y se sentó en el asiento delantero. Mientras conversaban, se acercó el acusado al vehículo de Abraham Solivan, por el lado derecho, y sin que mediaran palabras entre ellos, el acusado le hizo varios disparos de revólver a Abraham Solivan, a consecuencias de los cuales éste falleció. Su cadáver presentaba seis orificios de entrada de balas y dos orificios de salida de balas. El revólver usado por el acusado fue ocupado poco después por la policía debajo de una *pick-up* que estaba estacionada en la Calle Baldorioty frente a la mueblería Sylvania. Este revólver fue admitido en evidencia sin objeción.

La teoría de defensa fue la de la defensa propia. Su prueba tendió a demostrar que el mismo día de los hechos Abraham Solivan trató de tirarle su automóvil encima; que con anterioridad el occiso había hecho amenazas de dar muerte al acusado; que Abraham Solivan le echaba piropos a la esposa del acusado y que en una ocasión Abraham Solivan trató violentamente que la hija del acusado subiera a su automóvil; que el día de los hechos el acusado estaba en Cayey en una reunión de porteadores públicos y regresó a Caguas en el vehículo de otros compañeros; que Abraham Solivan les perseguía, les tiró su vehículo encima en dos ocasiones, primero cuando venían de camino y luego cuando se desmontaron; que al llegar a Caguas, se desmontaron de la guaguita en que venían y cuando el acusado iba caminando hacia donde estaba Abraham Solivan, éste hizo un aguaje, sacó un revólver y ahí sonaron los disparos; que el dueño de la guaguita llevó al acusado al cuartel de policía para entregarlo porque había matado al "pitirre" (Abraham Solivan) según murmuraba la gente.

de la Ley de Armas con unas acusaciones que no habían sido ordenadas, luego del archivo de las acusaciones originales."

En apoyo de este planteamiento el apelante cita nuestra decisión en el caso de *García* v. *Corte*, 68 D.P.R. 22 (1948), donde dijimos, ratificando a *Pueblo* v. *González*, 39 D.P.R. 380 (1939), que el permiso para nueva acusación, no es la orden para que se presente y que el juez debió seguir el lenguaje del estatuto y ordenar la acusación y al no hacerlo cometió error al declarar sin lugar la moción para que se sobreseyeran las acusaciones por ese motivo.

Esta jurisprudencia no puede servir de base a una decisión favorable al planteamiento hecho por el apelante. En esos casos se interpretaban los artículos 157 y 158 del Código de Enjuiciamiento Criminal incluidos en el Capítulo III de dicho Código titulado "Excepción Perentoria". De acuerdo con el 157 si el tribunal declaraba con lugar una excepción perentoria formulada contra la acusación, "esto constituirá sentencia definitiva respecto a la acusación impugnada, y excluirá la formación de otro proceso por el mismo delito, a no ser que a juicio del tribunal, la objeción en cuya virtud fuera admitida la excepción perentoria, pudiera evitarse mediante nueva acusación, y ordenare la presentación de ésta; . . . ." De acuerdo con el 158 si "el tribunal no permitiere que se modifique la acusación, ni ordenare la presentación de otra, deberá ponerse en libertad al reo, si estuviere bajo custodia; . . . ."

■ La Regla 62 de Procedimiento Criminal abolió la excepción perentoria y la sustituyó por la moción para desestimar, especificándose en la Regla 64 los fundamentos en que puede basarse dicha moción.

■ En el presente caso no se archivaron las acusaciones originales en virtud de haberse interpuesto contra ellas la antigua excepción perentoria o una moción para desestimar. El fiscal solicitó permiso para enmendar la acusación, a fin de suplir la alegación de subsiguiente que había sido omitida.

La Regla 38(b) de Procedimiento Criminal faculta al tribunal para permitir, en cualquier momento antes de la convicción o absolución del acusado, las enmiendas necesarias para subsanar algún defecto u omisión sustancial en la acusación.[4] Considerando que la alegación de convicción anterior era una de carácter sustancial[5] el tribunal dispuso que se celebrara de nuevo el acto de la lectura de la acusación enmendada.

No era necesaria la orden del tribunal a que se refiere el caso de *García* v. *Corte*, supra. Bastaba que el tribunal permitiera, como permitió en este caso, las enmiendas a las acusaciones.

Por su segundo señalamiento sostiene el apelante que el Tribunal sentenciador cometió error al no decretar la disolución del jurado por haber el fiscal aseverado, más bien que preguntado a la esposa del acusado, que éste había sido acusado de mutilación y convicto de acometimiento y agresión grave.

Es cierto que mientras el fiscal repreguntaba a la esposa del acusado, testigo de defensa, al hacerle una pregunta aseveró que el acusado había sido acusado en el año 1965 de un delito de mutilación declarándosele culpable del delito inferior de acometimiento y agresión grave.

---

[4] La Regla 38(b) dispone:

"(b) *Subsanación de defecto sustancial.* Si la acusación o la denuncia adolecieren de algún defecto u omisión sustancial, el tribunal en el cual se ventilare originalmente el proceso podrá permitir, en cualquier momento antes de la convicción o absolución del acusado, las enmiendas necesarias para subsanarlo. Si se tratare de una acusación, el acusado tendrá derecho a que se le celebre de nuevo el acto de la lectura de la acusación. Si se tratare de una denuncia, el acusado tendrá derecho a que el juicio se le celebre después de los cinco días siguientes a aquel en que se hiciere la enmienda."

[5] Los delitos graves (*felonies*) en grado subsiguiente aparejan penas más severas. A esos únicos fines es que se hace en la acusación la alegación de convicción anterior. *González* v. *Rivera, Jefe Penitenciaría*, 71 D.P.R. 786 (1950); *Sánchez* v. *Angeli*, 80 D.P.R. 154 (1957); *Pueblo* v. *Cabán Rosa*, 92 D.P.R. 866 (1965).

■ Asumiendo que fue un error del fiscal llevar al jurado un hecho sobre el cual no había prueba, del récord surge que posteriormente el fiscal ofreció en evidencia y fue admitida copia certificada de la sentencia dictada contra el acusado en el caso de mutilación a que se refirió el fiscal cuando repreguntaba a la esposa de aquél. De haberse cometido, el error quedó subsanado y no puede sostenerse que se perjudicaran los derechos sustanciales del apelante.

Se señala como tercer error que el tribunal permitiera que pasaran al jurado declaraciones juradas y certificaciones de sentencias dictadas contra el apelante.

Los documentos que específicamente señala son la transcripción parcial del testimonio prestado por la esposa del acusado en otro proceso contra el apelante celebrado en el año 1965, una sentencia y una denuncia.

■ El jurado no se llevó consigo ninguna confesión del acusado o declaración de éste conteniendo admisiones incriminatorias. Véase *Pueblo* v. *Vega Román*, 92 D.P.R. 677 (1965); invocado por el apelante. La Regla 140 de Procedimiento Criminal prohíbe que el jurado lleve consigo al retirarse a deliberar, las deposiciones.[6] Suponiendo que la transcripción parcial del testimonio de la esposa del acusado prestado con anterioridad en otro proceso, cayera dentro de la prohibición de la Regla 140, y ello constituyera error, el mismo no daría lugar a la revocación de las sentencias apeladas.

En el contrainterrogatorio del fiscal, esa testigo había declarado que era la primera vez que venía a corte y que no conocía de otros casos que hubiera tenido su esposo. La transcripción se presentó para demostrar que ella había comparecido antes a la corte y había sido testigo en otro caso seguido contra su esposo. La transcripción admitida en evidencia y que

---

[6] "Regla 140. Jurado; Deliberación; Uso de Evidencia

Al retirarse a deliberar, el jurado deberá llevarse consigo todo objeto o escrito admitido en evidencia, excepto las deposiciones."

pasó al jurado, es breve. Se limita la testigo a declarar que conoce al acusado quien es ahora su esposo, que conoce a Catalina López, quien es su hermana y esposa de Rogelio Alvino pero que para ese tiempo estaban separados; que en 22 de julio de 1964 vio a su hermana y que vivían juntas en la misma casa en el barrio Beatriz de Cayey. Eso es todo lo que contiene la susodicha transcripción. Estimamos por consiguiente, que el hecho de que el jurado se llevara consigo esa transcripción, al retirarse a deliberar, no perjudicó los derechos sustanciales del acusado-apelante.

Se señala como cuarto y último error que el tribunal admitiera prueba de la convicción anterior alegada en las acusaciones, a pesar de que el acusado la había aceptado previamente, e invoca los casos de *Pueblo* v. *Aponte González*, 83 D.P.R. 511 (1961) y *Pueblo* v. *Hernández Pérez*, 94 D.P.R. 616 (1967).

■ Conforme a las disposiciones de la Regla 68 de Procedimiento Criminal y a nuestras decisiones, cuando el acusado admite en tiempo la alegación de convicción anterior, ésta no se hará saber al jurado en forma alguna. Hemos dicho que el acusado sólo debe ser juzgado por el delito imputado y que prueba de la comisión de otros delitos es inadmisible a menos que caiga dentro de una de las excepciones establecidas en nuestra jurisprudencia.

En este caso, si bien el fiscal presentó y fue admitida prueba que pasó al jurado sobre la convicción anterior alegada en las acusaciones, también se admitió prueba sobre otros delitos anteriores cometidos por el acusado. ([7]) En esta prueba figura una convicción por ataque para cometer homicidio, y varias convicciones por el delito de acometimiento y agresión grave y acometimiento y agresión simple. Toda esta prueba fue admitida bajo la doctrina del caso de *Pueblo* v.

---

([7]) Se admitió en evidencia tanto el récord penal de la víctima como el del acusado.

*Cruz*, 65 D.P.R. 172 (1945), al efecto de que el acusado puede presentar prueba de actos específicos de violencia cometidos por la víctima cuando ha alegado la defensa propia y está en controversia (1) cual de los dos, el acusado o la víctima inició el combate y (2) cuando el acusado trate de probar que tenía motivos para creer al ser atacado por la víctima que se hallaba frente a un enemigo peligroso; pero que si el acusado trata de probar crímenes de sangre cometidos por la víctima el Pueblo puede presentar evidencia para probar convicciones de la misma clase por parte del acusado.

Dadas las circunstancias concurrentes, el hecho de que pasara al jurado prueba de la convicción anterior alegada en las acusaciones, no perjudicó los derechos sustanciales del acusado ni tal hecho justifica la revocación de las sentencias apeladas.

*Se confirmarán dichas sentencias.*

El Juez Presidente Señor Negrón Fernández, no intervino.